**PENSION BENEFIT GUARANTY CORPORATION**

v.

**JEANNETTE NEWSPAPERS, INC., a/k/a Jeannette Publishing Company, William J. Monsour, Robert G. Monsour, Roy C. Monsour, Howard P. Monsour, Laurel Valley Farms, Monsour Gator Groves, Concepto Nuevo Incorporated, Norwin Newspapers, Inc., Royal Emergency Services, Incorporated, Cardio-Pulmonary Associates, Cabin Hill Incorporated, Eastwin Incorporated, Maryville-Alcoa Newspapers, Inc., Logan Banner, Incorporated, James D. Lancaster, M.C. Burkhalter.**

Civ. A. No. 81–799.

United States District Court, W.D. Pennsylvania.

May 9, 1984.

---

Roger Lerner, Washington, D.C., for plaintiff.

Duke George, New Kensington, Pa., Edward Olds, Monsour & Olds, Pittsburgh, Pa., George C. Hawkins, Gadsden, Ala., Gary Fine, Greensburg, Pa., for defendants.

## OPINION

WEBER, District Judge.

Various dispositive motions are now pending and have been fully briefed and supported. These matters are now ripe for disposition.

## FACTS

This is an action by the Pension Benefit Guaranty Corporation to recover deficiencies in the two employee pension plans of Jeannette Newspapers at their termination on July 29, 1975. The Pension Benefit Guaranty Corporation has sued a number of individuals and business entities in an effort to identify the controlling entity or group which would be responsible for the deficiencies.

The confusion over the identity of the responsible party is due in large part to the fact that a sale of Jeannette Newspapers was effected on the same day the plan was terminated, July 29, 1975. Thus there are two groups who could conceivably satisfy the definition of "employer" under ERISA. 29 U.S.C. § 1301(b); 29 C.F.R. § 2612.2.

Prior to July 29, 1975, the stock of Jeannette Newspapers was held by four stockholders, defendants Lancaster, Burkhalter, Logan Banner, Inc., and Maryville-Alcoa Newspapers. (Lancaster Defendants). On July 29, 1975 these Lancaster defendants sold all their shares in Jeannette Newspapers to the four Monsour Brothers. The remaining defendants are entities allegedly controlled by the Brothers Monsour and included in this suit under a "common control" theory, 26 C.F.R. § 11.414(c)–2, and together with the Brothers comprise the "Monsour Defendants" for ease of reference.

During negotiations for the purchase of Jeannette Newspapers, the Brothers Monsour extracted the agreement to terminate the pension plans. Jeannette Newspapers had fallen behind on its obligations to the funds and the Brothers Monsour did not wish to assume responsibility for these deficiencies. It was therefore agreed that the plans would be terminated as a condition of sale and the Monsours would pay higher wages to the employees of Jeannette Newspapers in return.

The sale of the newspaper and termination of the pension plans were both accomplished on July 29, 1975. When the Pension Benefit Guaranty Corporation ascertained the deficiencies, it brought this suit.

We must identify the various motions. The Lancaster defendants have moved for summary judgment on the Monsour defendants' crossclaim. The Monsour defendants oppose this motion and have filed a motion for summary judgment against

Pension Benefit Guaranty Corporation. The Pension Benefit Guaranty Corporation has filed a cross motion for summary judgment against the Monsour defendants, and a motion to dismiss the Lancaster defendants. There are no disputed issues of material fact and summary judgment is appropriate.

## ANALYSIS

■ We first address the Pension Benefit Guaranty Corporation's Motion to Dismiss the Lancaster defendants. Plaintiff reveals that discovery has provided facts which clearly indicate that the Lancaster defendants are not a controlling group as defined in 26 C.F.R. 11.414(c)–(2) and therefore cannot be liable for the pension plan deficiencies. We see nothing of record to contradict this view of the facts and the motion will therefore be granted.

■ The Monsour defendants move for summary judgment, contending that they too are outside the definition of employer under the Act. It is argued that the Monsour defendants were not employers for purposes of ERISA because the pension plan had terminated prior to their acquisition of the newspaper. In the alternative, it is argued that if they were employers, they held that role only for one day, July 29, 1975, and cannot be held responsible for past deficiencies.

All evidence of record reveals that the understanding of all persons involved in the negotiations leading to the sale of Jeannette Newspapers that the pension plan would terminate on the date of sale so that the Brothers Monsour would not be forced to assume the burden of the plan. The Union representing the newspaper employees negotiated this concession in return for higher wages. All the principals involved in this transaction intended and understood that the pension plans would expire with the interest of the Lancaster defendants.

Pension Benefit Guaranty Corporation responds by pointing out that application to the Pension Benefit Guaranty Corporation for termination of the plan was not made by the Brothers Monsour until five (5) days later, and the plans were not officially terminated until two years later. However termination was made retroactive to July 29, 1975 and as a practical matter, no payments to or from the pension plan were made under the administration of the Monsours.

Pension Benefit Guaranty Corporation also refers to the contract of sale between the Lancaster defendants and the Monsour defendant. It is pointed out that sale of the stock was made contingent on the "terminability" of the pension plans and not their actual termination. Furthermore, the agreement granted an option until July 31, 1975 to cancel the sale if liability on the pension plans was excessive.

Neither of these points is persuasive. The first is merely an argument over semantics. The second has no effect on the actual fact of the situation. The plan as a practical matter ceased active coverage of employees on July 29, 1975.

The only evidence of record indicates that everyone involved in this transaction intended the pension plans to terminate with the change of ownership. Although the Monsours then submitted the paperwork, they merely operated as the administrator closing past accounts. And finally, the Pension Benefit Guaranty Corporation granted termination retroactive to July 29, 1975, officially recognizing that the plan terminated upon the Monsours' acquisition of the company.

Even if we conclude that the Monsour defendants were employers within the literal definition of the Act at least for July 29, 1975 we do not believe they fall within the intended scope of the Act. The involvement of the Monsour defendants in the pension plans here in issue was limited to the acquisition of the company on the same day the plans were terminated, and the submission of the necessary papers to effect that termination. Though a defendant may fit the literal definition of the statute, care must be taken that the spirit of the Act is not ignored. See *PBGC v. Dickens*, 535 F.Supp. 922 (W.D.Mich.1982). Here no purpose of the statute is advanced by visiting past deficiencies on a buyer trying to revive a business, particularly when all ex-

pectations are that the plan was terminated and the buyer is not liable. Such a result would be unjust and is not warranted by either the facts or the Act.

Because of this result, the Monsour defendants' cross-claim against the Lancaster defendants becomes moot. Also mooted then is the Lancaster defendants' motion for summary judgment.

### CONCLUSION

For the reasons stated above we conclude that neither the Lancaster defendants nor the Monsour defendants are employers within the meaning of ERISA, and are therefore not liable for the deficiencies on the pension plans. Therefore, Pension Benefit Guaranty Corporation's Motion to Dismiss the Lancaster defendants will be granted. The Monsour defendants' Motion for Summary Judgment will also be granted. The crossclaim asserted by the Monsour defendants and the Lancaster Motion for Summary Judgment on that crossclaim are moot.

An appropriate order will issue.